IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOHEN DIALLO UHURU,<br><br>    Plaintiff,<br><br>        v.<br><br>J. BENAVIDEZ, et al.,<br><br>    Defendants. | No. 2:22-CV-0784-TLN-DMC-P<br><br><br><br>ORDER |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's first amended complaint, ECF No. 25.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody. See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply,

concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner at California Medical Facility (CMF) in Vacaville, California. See ECM No. 25 at 1. Plaintiff names the following as defendants: (1) J. Benavidez, Warden at CMF; (2) Kathleen Allison, Secretary for California Department of Corrections and Rehabilitation (CDCR); (3) Emily J. Haley, Community Resource Manager at CMF; (4) Kristen N. Meyers, Chief Psychologist at CMF; (5) J. Tennant, Guard/Custody Case Worker at CMF; (6) J. Beckstead, Guard/Custody Case Worker at CMF; (7) D. Hurtado, AW-ADAC at CMF; (8) Zaklos, Jewish Chaplain at CMF; (9) A. David, Chief of Mental Health at CMF; (10) Traci Patterson, Chief Executive Officer at CMF; (11) J. Gary, Chief Deputy Warden and A.W. Business Services at CMF; and (12)-(18) John and Jane Does, prison staff, potentially including members of the religious review committee. See ECF No. 25 at 1-5.

Plaintiff complains he is improperly addressed by prison officials. Plaintiff contends: "I am not black nor am I white: I'm a Nubian Hebrew Israelite designated with a special class category." Id. at 6. Plaintiff argues that, similarly to transgender individuals, he has a right to be addressed by his preferred classification. See id.

Next, Plaintiff alleges Defendants deny his ability to "own and maintain religious property[,] which is confiscated by Defendants at will to impede, obstruct, and deny the practice of Nubian Hebrew Israelite religion." Id. Defendants have allegedly done so in reprisal and retaliation. Id.

///

Plaintiff contends that he has been "denied group worship in the chapel, [] musical praise on [his] instruments, [] holy fasting for the month of August, and [] annual banquets." Id. Plaintiff claims he was punished with harmful reprisals for requesting time and space in chapel. Id. Plaintiff alleges that his "request for reasonable accommodations to practice [his] religion [was] denied by D. Hurtado" and that he has been denied kosher meals, "forcing" him to go without meals for over 8 days. Id. at 8.

Plaintiff further alleges that Defendants deprived Plaintiff of his "ability to litigate successfully due to malfeasance and malevolence from policies, actions, decisions, and omissions designed to deny [him] copies of documentary evidence [and] legal affidavits . . . ." Id.

Plaintiff next contends that he is "continuously being injured by Defendants because there is not medical care for his metempsychosis, racing thoughts, metensomatosis, nor is official and appropriate documentation to recognize him as priest and Nubian Hebrew Israelite." Id. at 7. He states in another part of his claim that he has been denied medical supplies for "permanent incontinence" and "enuresis." Id. at 8. He further alleges that being denied diapers for his permanent incontinence is "exacerbating [his] mental illness." Id.

Plaintiff re-alleges that he has been subject to mistreatment for filing grievances and appeals against the defendants. Plaintiff claims he has been punished "through causal connections and personal involvement from their administrative mechanism in their department policies, actions, [and] omissions which have been detrimental to my rehabilitation under their so-called jurisdiction which harms my health and deliberately denies the practice of my Nubian Hebrew Israelite Religion." Id. Plaintiff states that defendants have forced him into "illegal quarantines" during which he had to eat off and sleep on the floor. Id. at 7. Plaintiff also alleges that he was denied hot water and that his cell was completely without power. Id. Plaintiff argues that this "prejudicial discrimination harms [his] safety" and is "designed to intentionally inflict emotional distress." Id. He states that he has suffered "sustained injuries from involuntary isolation" such as joint pain migraines, shortness of breath, chest pain, and loss of eyesight. Id. He later alleges that he is a victim of "elder abuse" citing that he is over the age of 68 and he has experienced "difficult[y] breathing due to dust, lint, and bacterial airborne pathogens from hair

follicles flowing continuously from CMF's ventilation system." Id. at 8.

Plaintiff further alleges that he has been subject to "illegal disciplinary proceedings by each and every Defendant against Plaintiff's homicidal ideations." Id. at 7. He alleges that has also been erroneously put on suicide watch, despite never being suicidal. Id. Plaintiff argues that he has been denied "basic necessities" such as "fresh air with outdoor exercise resulting in cruel and unusual punishment." Id. at 8. He claims he was not given aid when temperatures were up to 113 degrees Fahrenheit. Id. He believes he nearly suffered a heat stroke. Id.

## II.  DISCUSSION

Plaintiff presents cognizable claims for being denied his ability to practice his religion, for retaliation, and for unconstitutional conditions of confinement. His medical needs claim is insufficient, and to the extent any other claims are intended such contentions are too vague and conclusory. Plaintiff will be given leave to amend.

### A.  Religious Practice

The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974). Thus, for example, prisoners have a right to be provided with food sufficient to sustain them in good health and which satisfies the dietary laws of their religion. See McElyea v. Babbit, 833 F.2d 196, 198 (9th Cir. 1987). In addition, prison officials are required to provide prisoners facilities where they can worship and access to clergy or spiritual leaders. See Glittlemacker v. Prasse, 428 F.2d 1, 4 (3rd Cir. 1970). Officials are not, however, required to supply clergy at state expense. See id. Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to that afforded fellow prisoners who adhere to conventional religious precepts. See Cruz v. Beto, 405 U.S. 319, 322 (1972).

/ / /

/ / /

/ / /

However, the court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and valid penological objectives. See McElyea, 833 F.2d at 197. For instance, under the First Amendment, the penological interest in a simplified food service has been held sufficient to allow a prison to provide orthodox Jewish inmates with a pork-free diet instead of a completely kosher diet. See Ward v. Walsh, 1 F.3d 873, 877-79 (9th Cir. 1993). Similarly, prison officials have a legitimate penological interest in getting inmates to their work and educational assignments. See Mayweathers v. Newland, 258 F.3d 930, 38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison work rule).

While free exercise of religion claims originally arose under the First Amendment, Congress has enacted various statutes in an effort to provide prisoners with heightened religious protection. See Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005). Prior to these congressional efforts, prison free exercise claims were analyzed under the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987); see e.g. O'Lone, 382 U.S. at 349. The first effort to provide heightened protection was the Religious Freedom Restoration Act (RFRA) of 1993. However, the Supreme Court invalidated that act and restored the "reasonableness test." See City of Boerne v. P.F. Flores, 521 U.S. 507 (1997); see also Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's decision in City of Boerne invalidated RFRA and restored the "reasonableness test" as the applicable standard in free exercise challenges brought by prison inmates).

Congress then enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA) in 2000 ". . . in response to the constitutional flaws with RFRA identified in City of Boerne." Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 985 (9th Cir. 2006). Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on religious exercise unless there exists a compelling governmental interest and the burden is the least restrictive means of satisfying that interest. See id. at 986. RLUIPA has been upheld by the Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates exceptional government-created burdens on private religious exercise.'" Warsoldier, 418 F.3d at

994 (quoting Cutter v. Wilkinson, 125 S.Ct. 2113, 2117 (2005)).  Congress achieved this goal by replacing the "reasonableness test" articulated in Turner with the "compelling government interest" test codified in RLUIPA at 42 U.S.C. § 2000cc-1(a).  See id.

It is not clear whether a prisoner must specifically raise RLUIPA in order to have his claim analyzed under the statute's heightened standard.  In Alvarez v. Hill, the Ninth Circuit held that, if a complaint contains "factual allegations establishing a 'plausible" entitlement to relief under RLUIPA, [plaintiff has] satisfied the minimal notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure." 518 F.3d 1152, 1157 (9th Cir. 2008); but see Henderson v. Terhune, 379 F.3d 709, 715 n.1 (9th Cir. 2004) (declining to express any opinion about whether plaintiff could prevail under RLUIPA because plaintiff brought his claim under the First Amendment only).  Therefore, it is possible for a prisoner's complaint to raise both a First Amendment claim and RLUIPA claim based on the same factual allegations.  In other words, even if the plaintiff does not specifically invoke the heightened protections of RLUIPA, he may nonetheless be entitled to them.  Under Henderson, however, the plaintiff's claim may be limited to the less stringent Turner "reasonableness test" if the plaintiff specifically brings the claim under the First Amendment only.

Under both the First Amendment and RLUIPA, the prisoner bears the initial burden of establishing that the defendants substantially burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith.  See Freeman v. Arpaio,125 F.3d 732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); see also Warsoldier, 418 F.3d at 994-95 (analyzing claim under RLUIPA).  While RLUIPA does not define what constitutes a "substantial burden," pre-RLUIPA cases are instructive.  See id. at 995 (discussing cases defining "substantial burden" in the First Amendment context).  To show a substantial burden on the practice of religion, the prisoner must demonstrate that prison officials' conduct ". . . burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates." Graham v. Commissioner, 822 F.2d 844, 850-51 (9th Cir. 1987).  The burden must be more than a mere inconvenience.  See id. at 851.  In the context of

6

claims based on religious diets, a plaintiff must prove that prison officials refused to provide a diet which satisfies his religious dietary laws or that the available prison menu prevented him from adhering to the religious dietary laws mandated by his faith.  See Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir. 1995).

Under the First Amendment "reasonableness test," where the inmate shows a substantial burden the prison regulation or restriction at issue is nonetheless valid if it is reasonably related to a legitimate penological interest.  See Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citing Turner, 482 U.S. at 89).  In applying this test, the court must weigh four factors: (1) whether there is a rational connection between the regulation or restriction and the government interest put forward to justify it; (2) whether there are available alternative means of exercising the right; (3) whether accommodation of the asserted religious right will have a detrimental impact on prison guards, other inmates, or the allocation of limited prison resources; and (4) whether there exist ready alternatives to the regulation or restriction.  See id.; see also Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987).

Under RLUIPA, the government is required to ". . . meet the much stricter burden of showing that the burden it imposes on religious exercise is 'in furtherance of a compelling government interest; and is the least restrictive means of furthering that compelling governmental interest.'"  Green v. Solano County Jail, 513 F.3d 992, 986, 989 (9th Cir. 2008) (citing 42 U.S.C. § 2000cc-1(a)(1)-(2) and 2(b)); see also Warsoldier, 418 F.3d at 994-95.  Prison security is an example of a compelling governmental interest.  See Green, 513 F.3d at 989 (citing Cutter, 125 S.Ct. at 2113 n.13).  In establishing that the regulation or restriction is the least restrictive means to achieve a compelling governmental interest, prison officials must show that they actually considered and rejected the efficacy of less restrictive means before adopting the challenged practice.  See Green, 513 F.3d at 989 (citing Warsoldier, 418 F.3d at 999).

Plaintiff claims he was denied reasonable accommodations to practice his religion, including the denial of kosher meals, group worship in the chapel, the ability to play instruments, the ability to fast during August, and annual banquets.  See ECF No. 25 at 8.  To justify these denials, Defendants must show that they are acting in furtherance of a compelling government

7

interest and are using the least restrictive means to further that interest.  See Green, 513 F.3d at 989.  Because Plaintiff pleads that his religious exercise has been burdened, and it is not immediately apparent the government was acting in furtherance of a compelling government interest when burdening Plaintiff's religious exercise, Plaintiff pleads a cognizable claim.

### B. **Retaliation**

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes, 408 F.3d at 568.

As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect." Id. at n.11.  By way of example, the court cited Pratt in which a retaliation claim had been decided without discussing chilling.  See id.  This citation is somewhat confusing in that the court in Pratt had no reason to discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate penological interests.  See Pratt, 65 F.3d at 808-09.  Nonetheless, while the court has clearly stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also

Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action which is more than minimal satisfies this element. Thus, if this reading of Rhodes is correct, the chilling effect element is essentially subsumed by adverse action.

Plaintiff alleges that he has been subject to mistreatment for filing grievances and appeals against the defendants. ECF No. 25 at 7. Plaintiff claims that defendants retaliated against him by improperly addressing him and not allowing him to own and maintain religious property. Id. at 6. Plaintiff claims he has been punished "through causal connections and personal involvement from their administrative mechanism in their department policies, actions, [and] omissions which have been detrimental on by rehabilitation under their so-called jurisdiction which harms my health and deliberately denies the practice of my Nubian Hebrew Israelite Religion." Id. Plaintiff states that defendants have forced him into "illegal quarantines" during which he had to eat off and sleep on the floor. Id. at 7. Plaintiff also alleges that he was denied hot water and was kept in a cell that had no power. Id. Plaintiff pleads a cognizable retaliation claim because he alleges that defendants took adverse action against him by restricting his religious exercise and by placing him in worse conditions in retaliation for him filing grievances, a protected right.

### C. Medical Care

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2)

subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh,

1  90 F.3d 330, 332 (9th Cir. 1996).

2  Plaintiff describes a lack of medical care for several conditions, including metempsychosis, racing thoughts, metensomatosis, and incontinence. ECF No. 25 at 7-8. However, Plaintiff does not specify which defendant denied him medical care or that the official acted unnecessarily and wantonly for the purpose of inflicting harm. See id. Without specifying who denied him medical care and without alleging a purpose of inflicting harm, Plaintiff does not present a cognizable claim. See Farmer, 511 U.S. at 834.

### D. Conditions of Confinement

"The Constitution 'does not mandate comfortable prisons.'" Farmer, 511 U.S. at 832 (quoting Rhodes, 452 U.S. at 349); see also Hallett v. Morgan, 296 F.3d 732, 745 (9th Cir. 2002); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes, 452 U.S. at 347; Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint, 801 F.2d at 1107; see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. See Toussaint, 801 F.2d at 1107; Wright, 642 F.2d at 1133. "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991); see also Thomas v. Ponder, 611 F.3d 1144, 1151 (9th Cir. 2010); Osolinski, 92 F.3d at 938-39; Toussaint, 801 F.2d at 1107; Wright, 642 F.2d at 1133. When considering the conditions of confinement, the court

should also consider the amount of time to which the prisoner was subjected to the condition. See Hutto v. Finney, 437 U.S. 678, 686-87 (1978); Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005).

Plaintiff argues that Plaintiff argues that he has been denied "basic necessities" such as "fresh air with outdoor exercise resulting in cruel and unusual punishment." Id. at 8. He also alleges that he was denied cold water, ice, or the benefit of fans when the temperature was up to 113 degrees Fahrenheit. Id. Plaintiff believes he nearly suffered a heat stroke. Id. Plaintiff alleges sufficient facts to demonstrate he was kept in inadequate conditions of confinement by pleading that he was kept in an unbearably hot environment without relief. See Wilson v. Seiter, 501 U.S. 294, 304 (1991) (explaining the temperature a prisoner is subjected to in his cell may constitute inadequate conditions of confinement.).

### E. Vague and Conclusory Claims

Claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

Plaintiff alleges that Defendants deprived Plaintiff of his "ability to litigate successfully due to malfeasance and malevolence from policies, actions, decisions, and omissions designed to deny my copies of documentary evidence [and] legal affidavits . . . ." ECF 25 at 8. A mere conclusory allegation is insufficient to maintain a claim. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Plaintiff offers at least some degree of particularity as to what documents and evidence he was denied and who denied them. See id.

///

///

To the extent Plaintiff intends to bring additional claims not individually addressed here, the complaint was too vague or conclusory for the Court to engage in meaningful analysis. Leave to amend will be granted for Plaintiff to expand on any other claims he wishes to pursue.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a second amended complaint within 30 days of the date of service of this order.

Dated: August 16, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE